UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**KIMBERLEY A. STRADINGER**,<br><br>Debtor. | Case No. **05-65113-7** |
| **MOUNTAIN WEST FEDERAL CREDIT UNION**,<br><br>Plaintiff.<br><br>-vs-<br><br>**KIMBERLEY A. STRADINGER**,<br><br>Defendant. | Adv No. **07-00024** |

# MEMORANDUM of DECISION

At Butte in said District this 9th day of August, 2007.

Kimberly A. Stradinger, the Debtor/Defendant ("Kimberly") filed a voluntary Chapter 7 bankruptcy petition on October 14, 2005. Kimberly's schedules that accompanied the petition listed a 2005 Nissan Titan Truck on Schedule B, and listed "0.00" as the current market value of her interest in the truck, without deducting any secured claim or exemption. The truck was not listed on Kimberly's Schedule C, and Kimberly did not identify any creditor on Schedule D as having a secured claim against the truck.

Kimberly's Chapter 7 case was designated by the Trustee as a no-asset case. Kimberly's discharge of debts was entered on February 13, 2006, and the case was closed on February 15,

1

2006.

The Trustee subsequently moved to reopen Kimberly's bankruptcy on October 13, 2006, to administer a tax refund that Kimberly received after her bankruptcy case was closed. Consequently, the case was redesignated as an asset case and the Clerk of the Bankruptcy Court set January 15, 2007, as the bar date for filing proofs of claim. The Trustee later filed a "Trustee's Application for Final Compensation and Reimbursement of Expenses" on March 3, 2007, which reflects that the total disbursements made by the Trustee to parties other than Kimberly would be $821.34. The Trustee's Notice of Final Report and Proposed Distribution filed March 8, 2007, further reflects that after payment of the Trustee's fees and costs of $230.34 and the reopening fee of $220.00, that timely filed allowed unsecured claimants would receive their pro rata share of $371.00, representing a 2.37 percent distribution.

Mountain West Federal Credit Union ("Mountain West") is not listed on any of the pleadings filed by Kimberly and did not receive any of the aforementioned pleadings or notices filed in this case. Kimberly, through counsel, subsequently filed an amendment to Schedules B and D on March 23, 2007. Debtor's notice of amendment recites:

> The Debtor's initial filings indicated that she only had interest in one vehicle, however, she was also a joint debtor and owner of her husband's 2005 Dodge Truck that was financed with Mountain West Federal Credit Union.
>
> The vehicle had no equity at the time of her filing and since that date has been surrendered by her husband to this creditor.

Kimberly's amended Schedules B and D disclosed Kimberly's interest in a 2005 Dodge Truck and a 2005 Nissan Titan Truck, and further disclosed that the 2005 Dodge Truck is or was encumbered by a secured claim of $32,000.00. Kimberly's above notice and Kimberly's

2

amended Schedules B and D were served upon Mountain West.

Kimberly's March 23, 2007, amendment to Schedules B and D obviously prompted Mountain West to file a Complaint against Kimberly on March 30, 2007, wherein Mountain West seeks to except Kimberly's debts from discharge under 11 U.S.C. § 523(a)(3). Kimberly testified that upon receiving a copy of Mountain West's Complaint, she immediately filed on April 9, 2007, another Notice of amendment to Schedule D that recites:

> Schedule D did not reflect her obligation to Mountain West Federal Credit Union for the Nissan Pathfinder as indicated on the Debtor's Schedule B. The Debtor's initial filings indicated that she only had interest in one vehicle, however, she was also a joint debtor and owner of her husbands 2005 Dodge Truck that was financed with Mountain West Federal Credit Union. Additionally, her schedules indicated that she used a Nissan Pathfinder and paid for this vehicle on her Schedule J, however, [Debtor] was under the mis-understanding that the loan was solely in her husband's name.[1]
>
> This vehicle had no equity at the time of her filing and still has no equity. The Debtor has modified her Schedule D to properly reflect her financial obligation to this creditor and has supplied this Court with the amended schedules accordingly.
>
> If this Debtor is permitted to Amend her Schedule D to incorporate Mountain West Federal Credit Union this will make the Debtor's schedules true and accurate. The Creditor, Mountain West Federal Credit Union, thus will not be prejudiced by having this Court allow her to amend her schedules since this creditor would be entitled to receive its pro-rata share of the Debtor's assets which are not exempt and are to be distributed.

The amended Schedule D that accompanied the above Notice now lists a $32,500.00 obligation owing to Mountain West on Kimberly's Nissan Titan Truck and a $32,000.00 obligation owing to Mountain West on a 2005 Dodge Truck. Interestingly, Kimberly's notice of amendment filed

---

[1] Kimberly's Schedule J references a monthly payment of $541.72 on an unidentified auto. However, there is no reference to a Nissan Pathfinder. The Court presumes that counsel's reference to a Nissan Pathfinder was incorrect and should have been to the Nissan Titan as this is the first and only reference to a Pathfinder in the entire record.

3

April 9, 2007, incorrectly states that Mountain West would not be prejudiced because it would still be entitled to receive its pro-rata share of Kimberly's non-exempt assets. Mountain West was precluded from timely filing a proof of claim and thus did not share in the distribution of Kimberly's non-exempt assets.

Kimberly and Mountain West later entered into a Stipulation to Modify Stay that was filed with the Court on July 30, 2007.[2] In the Stipulation, Kimberly agrees to surrender the 2005 Nissan Titan on which Kimberly owes $31,064.80 and which has an agreed fair market value of $22,000.00. The Stipulation to Modify Stay was approved by Order entered July 30, 2007.

In the interim, after due notice, trial in this Adversary Proceeding was held in Butte on July 10, 2007. Mountain West was represented at the trial by attorney Craig Martinson of Billings, Montana. Kimberly was represented at the trial by attorney Daniel Sweeney ("Sweeney") of Butte, Montana. Leah Salazar ("Leah"), the senior manager of Mountain West, testified on behalf of Mountain West and Mountain West's Exhibits 1 through 11 were admitted into evidence without objection. Kimberly, Jerry Stradinger ("Jerry") and Heather Wylie ("Heather") testified on behalf of Kimberly, and Kimberly's Exhibits A and B were admitted into evidence without objection.[3] This memorandum contains the Court's findings of fact and

---

[2] The Stipulation reflects that as of the date of the Stipulation, Kimberly was delinquent on all monthly payments commencing with the monthly payment due on April 2, 2007–the first monthly payment due after Mountain West filed its Complaint against Kimberly.

[3] Kimberly's counsel withdrew Exhibit D and the Court denied the admission into evidence of Kimberly's Exhibit C on the basis that the Exhibit was not relevant. Exhibit C was purportedly a reaffirmation agreement between Jerry and Mountain West that was prepared in relation to Jerry's bankruptcy case. Kimberly was required to sign the reaffirmation agreement because she was a co-signor on the Note pertaining to the 2005 Dodge Truck. The fact that Kimberly was required to sign a reaffirmation agreement for Jerry's bankruptcy fails to prove in any fashion that Mountain West had notice of Kimberly's separate bankruptcy.

conclusions of law.

Prior to the trial, the parties filed a Final Pre-Trial Order that sets for the following agreed facts:

    1. That this Court has jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. § 157 & 1334 11 U.S.C. §523 as was provided in these statues prior to October 17, 2005.

    2. That Defendant, Kimberly A Stradinger aka Kimberly Stradinger is the Debtor in the above captioned bankruptcy proceeding.

    3. By a loan agreement Number 12644 for account no. 19260C dated June 14, 2005, (Account 19260C) Kimberly Stradinger agreed to be a co-obligor with her husband, Jerry R. Stradinger, on a loan in the principal sum of $32, 597.00 with Mountain West Federal Credit Union ("Credit Union").

    4. The party, Jerry R. Stradinger defaulted on this loan by not making payments as required and, has turned this truck over to Plaintiff. At this time, Jerry Stradinger has filed a separate Chapter 7 bankruptcy, Case No. 06-60863.

    5. Jerry Stradinger filed a Chapter 7 Bankruptcy Case on October 18, 2006, Case No. 06-60863. This case was voluntarily converted to a Chapter 13 Bankruptcy on October 25, 2006.[4] At the time he surrendered his vehicle, 2005 Dodge Pick-up Truck in February, 2007, he had paid the January 16, 2007 vehicle payment with the February 16, 2007 payment due, but the was still within the grace period for payment allowed by the Credit Union.

    6. By loan agreement Number 12631 for account no. 19265Cdated May 31, 2005, (Account19265A) Kimberly Stradinger entered into a loan and security agreement in the principal sum of $39,353.71 with Mountain West Federal Credit Union.

    7. The purpose of this loan was to purchase a 2005 Nissan truck which secures the loan. The loan was to be paid in monthly installments of $652.40 for a period of 71 months and one installment of $652.15.

    8. The individual, Kimberly Stradinger, still has possession of the 2005 Nissan Titan vehicle.

---

[4] An Order converting Jerry's case to Chapter 7 of the Bankruptcy Code was not entered until November 8, 2006.

      9. The discharge of the Debtor was entered in this case on February 15, 2006, with the case being closed after that date.

      10. The bankruptcy case of Kimberly Stradinger was reopened subsequent thereto to allow the Trustee to make disbursement of funds collected for the benefit of this bankruptcy estate.

      11. Upon being reopened, the Trustee requested and a proof of claim bar date of January 15, 2007 was issued.

      12. That Mountain West Federal Credit Union is the owner of the above described Notes identified and Accounts No. 19260C and 19265A.

      13. That each of the following documents, which are attached hereto as Exhibits, is genuine.

> 1. Note identified as Account19260C dated June 14, 2005 in the principal sum of $32,597.00 with Jerry R Stradinger Borrower and Mountain West Federal Credit Union as creditor.
>
> 2. Note identified as Account 19265A dated May 31, 2005 in the principal sum of $39,353.71 with Kimberly Stradinger Borrower and Mountain West Federal Credit Union as creditor.

The Court would also note that the Loan Agreement and Note reflected in Exhibits 1 and 2 relating to Account 19260C list Jerry as the applicant and Kimberly as the co-applicant, spouse or guarantor, and are signed by both Jerry and Kimberly.[5] The Loan Agreement and Note reflected in Exhibits 3 and 4 relating to Account 19265A list Kimberly and Jerry as joint borrowers, with Kimberly identified as the primary applicant.

The statute at issue in this case is 11 U.S.C. § 523(a)(3), which reads:

> A discharge under section 727 . . . of this title does not discharge an

---

[5] By Order entered March 14, 2007, Mountain West was granted relief from the automatic stay to pursue its nonbankruptcy remedies with respect to the 2005 Dodge Truck. The Dodge Truck was returned to Mountain West and liquidated. The deficiency balance on the 2005 Dodge Truck, following liquidation, was $6,883.39 as of June 19, 2007.

>individual debtor from any debt—
>
>* * *
>
>>(3) neither listed nor scheduled under section 521(1) of this title, with the name, if know to the debtor, of the creditor to whom such debt is owed, in time to permit - - -
>>
>>>(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case is time for such timely filing[.]

The parties are in agreement that Mountain West was not listed as a creditor in Kimberly's original schedules and it further appears that the parties agree that the debt at issue is not of a kind specified in §§ 523(a)(2), 523(a)(4) or 523(a)(6). Accordingly, the first element of nondischargeability under 11 U.S.C. § 523(a)(3) is satisfied. The next question is thus whether Mountain West had notice or knowledge of Kimberly's bankruptcy and if not, whether the entire deficiency balances on Account19260C and Account 19265A are excepted from discharge or whether only a pro rata portion of such deficiency balances are excepted from discharge.

The first issue of whether Mountain West had actual knowledge of Kimberly's bankruptcy in time to file a Proof of Claim boils down to an issue of credibility. When the trial in this Adversary Proceeding concluded on July 10, 2007, the Court was convinced that Mountain West did not have knowledge of Kimberly's bankruptcy until Kimberly amended her Schedules in March of 2007. However, the Court wanted additional time to ponder whether the testimony of one individual had more probative weight than the testimony of three individuals, and possibly four individuals if one considered the pontificating done by Sweeney during the trial. After carefully considering all the testimony and evidence, the Court is convinced that

7

Mountain West did not have any knowledge of Kimberly's bankruptcy until after the claims bar date expired in January of 2007, and until after it was too late for Mountain West to share in the distribution of nonexempt assets.

Throughout the trial, Sweeney repeatedly tried to convince this Court that Mountain West had to have had knowledge of Kimberly's bankruptcy because Kimberly signed a reaffirmation agreement that was prepared in connection with Jerry's case. According to the testimony, Jerry needed additional money and thus approached Mountain West sometime after he filed his bankruptcy petition on October 18, 2006, about increasing a revolving line of credit. Leah informed Jerry that Mountain West would increase the credit line if Jerry reaffirmed three debts in his bankruptcy. Jerry and Mountain West proceeded to enter into three reaffirmation agreements, none of which were filed with the Court. Heather testified that the reaffirmation agreements pertained to Jerry's 2005 Dodge Truck, a Visa card and a signature loan. Because Kimberly was the co-obligor on the 2005 Dodge Truck loan, Mountain West requested that Kimberly sign the reaffirmation agreement as well as Jerry. Mountain West prepared the reaffirmation agreements and then told Jerry that he could file them with the Court directly.

Because the reaffirmation agreements had not been filed with the Court, Leah called Sweeney's office on January 4, 2007, to inquire about the status of the reaffirmation agreements. Heather's initial testimony comported with the foregoing. However, the Court believes that once Heather comprehended the deficiency of her testimony and the argument posited by Sweeney, Heather, as reflected in the following exchange between Heather and Mountain West's counsel, altered her testimony in an attempt to convince the Court that Leah was in fact aware of Kimberly's bankruptcy at least by January 4, 2007–eleven days prior to the January 15, 2007,

8

claims bar date:

> Heather: When they called in January, right after the Holidays, they said we need to know what is going on with the reaffirmation agreements and I said the reaffirmation agreements that you gave to Jerry to have directly brought to the Court and the girl said yes, and I said well in which bankruptcy would you like to discuss and they said why don't we talk about both of them.
>
> Counsel: Who said that?
>
> Heather: Leah.
>
> Counsel: She specifically said that?
>
> Heather: That's who I spoke to.

In response to Heather's testimony, Leah was called back to the stand and testified that she and Heather had discussed the reaffirmation agreements but that Kimberly was never part of the discussion. Leah's testimony on this point is more credible because there was never any mention in the record that Kimberly and Mountain West were discussing the terms of any reaffirmation agreement, and Heather certainly knew when Leah called on January 4, 2007, that the inquiry was about the only reaffirmation agreements at issue, namely those pertaining to Jerry's bankruptcy. Thus, the Court finds it highly improbable that Heather would have asked Leah which case they were discussing because the only case they could possibly have been discussing was Jerry's.

Not one to let the matter go, Sweeney concluded the trial with the following argumentative exchange with Leah:

> Sweeney: Mrs. Salazar, you had another, ah, hearing in this Court, a very short one, in Jan..., early part of January of 07, do you remember that?
>
> Leah: I believe it was February, I'm not sure of the date.

9

Sweeney: Well I'm going to... if I were to tell you the record would show...

Leah: It was a valuation...

Sweeney: But the documents that were filed by your attorney at that time was prior to the early part of January or latter part of December, correct?

Leah: I believe... I'm not sure of the date....

Exchange between counsel and the Court over an objection

Sweeney: You spoke with our office even at that time about both bankruptcies didn't you Mrs. Salazar?

Leah: I had talked to you about Jerry's, Jerry's bankruptcy and I never....

Sweeney: And about Kimberly's?

Leah: I did not.

Sweeney: You don't recall talking to me about that?

Leah: No, I do not.

Sweeney: You don't recall talking to Heather about the other one either do you?

Leah: I do not.

Sweeney: You don't remember talking about any of those?

Leah: I remember talking to Heather about the reaffirmation agreements, as I stated.

Sweeney: And when you knew that Jerry had filed bankruptcy and you knew that Kimberly was a co-signor, it didn't give you any indication, or didn't give you any cause, if you had forgot about these other conversations... wouldn't you have any cause to look to see about what Kimberly might have been doing?

Leah: Why would I look?

Sweeney: Yah, because you were already told weren't you?

      Leah:         No, why would I look?  She's a co-maker.

      Once again, the Court finds that Leah's testimony was persuasive while Sweeney's combative statements were intended to do nothing other than distract the Court.  Sweeney's questions about a hearing in January of 2007 could only relate to a baseless motion for valuation of security that Sweeney filed in Jerry's case on January 3, 2007, wherein Jerry sought to value the 2005 Dodge Truck at $19,050.00.  Mountain West, through other counsel, filed a response to the motion for valuation of security on January 12, 2007, and a hearing on the matter was held in Butte on February 6, 2007, where the Court summarily denied the motion.  As Leah indicated, the conversation between herself and Sweeney pertained to the valuation matter in Jerry's case, and had nothing to do with Kimberly's case in which nothing transpired or was filed between October 19, 2006, and March 6, 2007.

      In addition to the foregoing, Heather also sought to convince this Court that she did not include Mountain West in Kimberly's bankruptcy case because somebody at Mountain West had told Heather that Kimberly did not owe any obligations to Mountain West.  The Court doubts that Heather obtained such information from Mountain West, but under 11 U.S.C. § 523(a)(3), a debt is either listed or not listed, irrespective of fault, intent or motive.  Moreover, evidence in the record shows that both Kimberly and Heather knew that Kimberly was indebted to Mountain West, despite anything they may have allegedly adduced to the contrary from Mountain West's actions.

      Kimberly testified that she remembered signing Exhibit 4, the security agreement pertaining to the 2005 Nissan Truck.  If Kimberly remembered signing the security agreement, she surely had some inclination that she was obligated to Mountain West.  Such fact is further

11

buttressed by Kimberly's testimony that she visited Mountain West in October of 2005, before she filed her petition to let them know she was thinking of filing bankruptcy. At that time, Kimberly spoke to Debbie at Mountain West to ascertain whether a bankruptcy would adversely impact her standing or status at Mountain West. Later in the trial, Kimberly altered her testimony to suggest that she visited Mountain West in October of 2005 because she was concerned about what a bankruptcy would do to Jerry's standing at Mountain West. Kimberly's latter testimony does not comport with Kimberly's earlier testimony wherein Kimberly explained that she and Jerry were separated in October of 2005, contemplating divorce, and were fighting over assets. The record establishes that Kimberly knew, in October of 2005, that she was indebted to Mountain West.

Similarly, Heather was overly eager to let the Court know that she, as she supposedly does in every case, had meticulously reviewed the titles to all vehicles owned by Kimberly and Jerry.[6] The title to the 2005 Nissan Titan specifically reflects that the 2005 Nissan Titan is subject to Mountain West's security interest. Common sense would generally dictate that if Mountain West is listed as having a security interest in a vehicle titled to Kimberly, Mountain West should be listed as such in Kimberly's schedules. Indeed, the simple act of including Mountain West somewhere in Kimberly's schedules, or at least on the mailing matrix, and providing them with notice of Kimberly's bankruptcy, would have prevented this entire Adversary Proceeding. As the Second Circuit Court of Appeals aptly reasoned that ".... he who seeks the protection of a statutory bar against payment of his debts be required to bring himself

---

[6] Heather, and apparently not Sweeney, specifically omitted Jerry's 2005 Dodge Truck from Kimberly's schedules on the basis that the 2005 Dodge Truck was titled solely in Jerry's name.

within the provisions of the statutory grant." *Milando v. Perrone*, 157 F.2d 1002, 1004 (2nd Cir. 1946).

As mentioned above, the record indicates that Kimberly visited Mountain West in October of 2005 and that she was contemplating bankruptcy. Heather also testified that she spoke to Leah about Kimberly possibly filing bankruptcy on October 10, 2005. Based upon Kimberly's and Heather's discussions with Mountain West in early October of 2005, Sweeney appears to maintain that Mountain West was on some type of inquiry notice. The fact that Kimberly may have been contemplating bankruptcy does not provide actual notice to Mountain West that Kimberly had indeed filed bankruptcy at a later date. *See In re Bosse*, 122 B.R. 410, 413 (Bankr. C.D. Cal. 1990) ("Intent to file and actual filing are two different matters, intention falling within the realm of rumor or speculation[.]"); *In re Stratton*, 29 B.R. 93, 95 (Bankr. W.D.Ky. 1983) ("The unsubstantiated rumor relating to the debtors' financial condition is insufficient to be generally equivalent to legal notice sufficient to permit the creditor to be apprised as to the time and place of the bankruptcy filing and to participate in its administration."); and *Lashover v. Audler*, 171 So.2d 834, 836 (La.App.1965) (The degree of knowledge required in nondischargeability litigation is "more than the knowledge which might result from a casual reference to a bankruptcy in an offhand manner during a conversation attendant upon a chance meeting. It means knowledge of facts at least sufficient to apprise the creditor that a proceeding is actually commenced and where that proceeding is pending.") In sum, insufficient credible evidence exists in the record to convince this Court that Mountain West had any notice or knowledge of Kimberly's actual bankruptcy filing until after the claims bar date had expired. As a consequence, Mountain West was denied the right to timely file a

proof of claim; a fundamental right that is specifically protected under 11 U.S.C. § 523(a)(3). As persuasively reasoned in dicta by a bankruptcy court, "[a]t the very least, it would seem that the legal burden should be on the 'wrongdoer', the omitting debtor, rather than on the innocent party, the omitted creditor." *In re Crum*, 48 B.R. 486, 491 (Bankr. N.D.Ill. 1985).

Because Kimberly failed to list her debt owed to Mountain West in time for Mountain West to file a timely proof of claim, and thereby partake in the distribution of assets, the Court finds that Mountain West's obligation is excepted from discharge under 11 U.S.C. § 523(a)(3)(A). Sweeney, however, argued that if the Court determined that Mountain West's obligation should be excepted from discharge, such finding should be limited solely to the pro rata share of $371.00 that Mountain West would have been entitled to receive had Mountain West timely filed its proof of claim. Sweeney offered not a single case in support of his position.

Notwithstanding Sweeney's failure to cite to a single case in support of his pro rata theory, the Court performed an extensive search and found one case that allowed for a reduction of a creditor's nondischargeable claim based upon what the creditor would have received under a pro rata distribution. *In re Ladnier*, 130 B.R. 335, 338 (Bankr. S.D.Ala. 1991). The court in *Ladnier* reasoned that "[b]alancing the debtor's right to a fresh start with the creditor's right to payment of a debt, . . . equity demands the Defendant receive an amount equal to a *pro rata* share of the distribution to the creditors in the Plaintiff's bankruptcy that she would have received if she had been given notice and had filed an allowable claim." Other courts, without addressing Sweeney's equitable pro rata argument, have simply denied discharge of the entire unlisted debt. For example, *Laczko v. Gentran, Inc. (In re Laczko)*, 37 B.R. 676, 679 (9th Cir. BAP 1984), citing

14

*Milando*, 157 F.2d at 1003, held that "section [§ 17(a)(3) ][7] provides that a discharge shall not release a bankrupt from a debt which he has not scheduled in time for it to be proved and allowed in the bankruptcy proceedings unless the creditor has notice or actual knowledge of the proceedings. The courts have no power to disregard this clear language." *See also In re Purcell*, 362 B.R. 465, 473-76 (Bankr. E.D.Cal. 2007) ("Plaintiff is correct in asserting that if he had scheduled the tax debt when he filed his case in time to allow Defendant to file a proof of claim, Defendant would have received nothing from the estate. . . . [However,] "Judgment shall be entered in favor of the Defendant declaring that the debt validly owed by Plaintiff to Defendant . . . [is] excepted from discharge . . pursuant to 11 U.S.C. Section 523(a)(3)(A)."); *In re Jongquist*, 125 B.R. 558 (Bankr. D.Minn. 1991) ("Had [the creditor's] claim been properly scheduled or had he been timely notified of the case, the most he would have received was a distribution of a few dollars along with the other unsecured creditors. As a result of [the debtor's] failure to schedule his claim or give [the creditor] notice, [the creditor's] debt [of $28,857.23] is nondischargeable."); and *In re Ferguson*, 4 Mont. B.R. 424, 425 (Bankr. D. Mont. 1987) ("The Order of Discharge does not affect a debtor where a creditor is neither listed nor scheduled.")

The language of § 523(a)(3) is clear and unambiguous. "A discharge under section 727 . . . does not discharge and individual debtor from any debt . . . neither listed nor scheduled[.]" Section 523(a)(3) merely creates another instance under the Bankruptcy Code where an obligation passes through the bankruptcy unaffected. Indeed, had Congress intended to allow for the discharge of only a pro rata portion of unlisted or unscheduled obligations, Congress could have easily so provided. Additionally, this Court agrees "that the court's equitable powers can

---

[7] Section 17(a)(3) of the Bankruptcy Act was the predecessor to 11 U.S.C. § 523(a)(3).

only be exercised in furtherance of statutory provisions, not in derogation of such provisions. As the United States Supreme Court has stated, 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.' *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). *See also Powerline Oil Co. v. Koch Oil Co. (In re Powerline Oil Co.),* 59 F.3d 969, 973 (9th Cir.1995)('Equity may not be invoked to defeat clear statutory language, nor to reach results inconsistent with the statutory scheme established by the Code.')." *Purcell*, 362 B.R at 475-76. For the reasons discussed above, the Court finds and concludes that the entire deficiency amounts owed by Kimberly to Mountain West on the unlisted debts pertaining to Account 19260C and Account 19265A must be excepted from Kimberly's discharge under 11 U.S.C. § 523(a)(3)(A).

IT IS THEREFORE ORDERED that a separate Judgment shall be entered in favor of the Plaintiff, Mountain West Federal Credit Union, and against the Debtor/Defendant, Kimberly A. Stradinger; and any deficiency balances left owing to Mountain West Federal Credit Union on Accounts 19260C and 19265A are excepted from Debtor's discharge pursuant to 11 U.S.C. § 523(a)(3)(A).

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana